United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

ROGERS DEMAREA VAUGHN,

Plaintiff,

v.

COUNTY OF NAPA, et al.,

Defendants.

Case No. 25-cv-01342-LB

**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT**

Re: ECF No. 37

## INTRODUCTION

The plaintiff in this excessive-force case sued the County of Napa and Officer Joshua Coleman for (1) excessive force under 42 U.S.C. § 1983, (2) a violation of the Bane Act, Cal. Civ. Code § 52.1(a), (3) negligence, and (4) battery.

The underlying facts are undisputed. The plaintiff was a passenger in a car where the driver, after being stopped for having expired tags, fled from a police patrol vehicle. During the chase, the car began smoking, and the driver slowed the car and fled on foot. The plaintiff grabbed two firearms from the car before also fleeing. Officer Coleman pursued the plaintiff and issued commands to put his hands up and drop the guns. The plaintiff did not follow the commands to put his hands up but dropped one of the firearms about twenty seconds into the chase and within two seconds of commands to drop the gun. Coleman then saw the plaintiff holding a second firearm by the grip in his right hand and commanded him to drop the gun multiple times, warning once that

he would shoot. The plaintiff threw the second gun across his body from right to left. Coleman shot the plaintiff within less than one second of the firearm's leaving the plaintiff's hand.

The defendants moved for summary judgment on all claims, contending that (1) the excessive-force claims are barred by *Heck v. Humphrey*, Coleman's use of force was reasonable under the circumstances, and he is entitled to qualified immunity, (2) there is no evidence of intent by Coleman to support a Bane Act claim, (3) the battery claim fails because Coleman acted reasonably, and (4) the negligence claims are barred under Cal. Civ. Code § 3333.3. The plaintiff disputes the defendants' arguments on all but the negligence claims.

The court grants summary judgment in favor of the defendants on the plaintiff's negligence claims, which he conceded as barred under Cal. Civ. Code § 3333.3. The court denies summary judgment as to the excessive-force and battery claims because they are not *Heck*-barred, fact disputes preclude determining that Coleman's use of force was reasonable, and qualified immunity does not apply. Fact disputes preclude granting summary judgment on the Bane Act claim.

## STATEMENT

### 1. Traffic Stop and Vehicle Pursuit

After eating food at Wendy's, the plaintiff got into a gold Lexus sedan driven by Amarion Hill, his childhood friend.[1] Officer Cassaundra Fallon of the Napa County Sheriff's Office saw the Lexus and noticed that it had dark window tint and expired registration tags.[2] Hill and the plaintiff became aware of Fallon when she activated her patrol vehicle's lights.[3] Hill pulled onto the shoulder, but after Fallon stepped out of her patrol vehicle, he drove away.[4] Fallon pursued them.[5]

[1] Pl.'s Dep., Ex. 1 to Cravanas Decl. – ECF No. 40-2 at 8 (p. 67:2–7), 14 (p. 78:5–12). Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] Fallon Dep., Ex. A to Blechman Decl. – ECF No. 37-1 at 10–12 (pp. 26:16–28:17).

[3] Pl.'s Dep., Ex. 1 to Cravanas Decl. – ECF No. 40-2 at 11–12 (pp. 74:24–75:3).

[4] *Id.* at 12 (p. 75:11–15); Fallon Dep., Ex. A to Blechman Decl. – ECF No. 37-1 at 14 (p. 30:1–15).

[5] Fallon Dep., Ex. A to Blechman Decl. – ECF No. 37-1 at 14 (p. 30:16–19).

Officer Coleman was on duty in his office as a school resource officer, heard the attempted traffic stop and pursuit, and went in his patrol car to assist Fallon.[6] The Lexus led the officers on a pursuit over the next five minutes with Hill speeding through residential areas, speeding in the wrong lane by schools, and driving through a middle school field.[7] The Lexus began smoking and slowed down around Souza Way in Vallejo.[8] While the Lexus was still rolling, Hill exited the car and fled on foot, with Fallon pursuing first in her patrol vehicle and then on foot.[9]

**2. The Plaintiff's Deposition**

Before exiting the car, Hill and the plaintiff began gathering their belongings.[10] The plaintiff noticed two firearms under the passenger seat, grabbed them, placed one firearm under each arm, and then put his blue jacket on over them.[11] He positioned the firearms this way to make it easier to flee and keep the firearms away from the officers.[12]

As the plaintiff exited the car, he saw Coleman with his firearm drawn and pointed at him.[13] He fled on foot with the firearms under his armpits and concealed by his jacket, and Coleman pursued.[14]

While still running, the plaintiff reached a driveway where he raised both arms in an effort to cause the firearms to fall to the ground, but only the firearm under his right arm fell.[15] The plaintiff reached under his jacket to free the second firearm and attempted to let it drop to the

---

[6] Coleman Dep., Ex. B to *id.* – ECF No. 37-1 at 51–54 (pp. 39:6–40:13, 41:2–42:21).

[7] *Id.* at 68–71 (pp. 57:20–59:6, 60:11–19); Fallon Dep., Ex. A to *id.* – ECF No. 37-1 at 14–19 (pp. 30:16–31:8, 35:5–38:9).

[8] Fallon Dep., Ex. A to *id.* – ECF No. 37-1 at 22–23 (pp. 41:11–42:13).

[9] *Id.* at 23–24 (pp. 42:20–43:11).

[10] Pl.'s Dep., Ex. 1 to Cravanas Decl. – ECF No. 40-2 at 10 (p. 73:12–18).

[11] *Id.* at 11–18 (pp. 74:13–21, 80:5–7, 82:17–22, 88:24–89:4).

[12] *Id.* at 21 (p. 98:9–15).

[13] *Id.* at 27–28 (pp. 107:23–108:1).

[14] *Id.* at 17–18 (pp. 88:24–89:4).

[15] *Id.* at 22 (p. 100:3–6), 29–30 (pp. 111:7–112:9).

ground like the first.[16] He was unable to free the firearm enough for it to fall but was able to grab the firearm to toss it away from himself.[17] The plaintiff testified at his deposition that the first shot struck him while his hand was still inside his jacket attempting to free the firearm and that the second shot struck him "as the gun was coming out" of his jacket.[18]

### 3. Coleman's Deposition

Coleman saw the plaintiff scramble out of the Lexus and drew his firearm after observing that the plaintiff had both hands in his pockets raised to chest level, leading him to believe the plaintiff was armed.[19] The plaintiff fled, and Coleman pursued on foot, calling out commands to put his hands up and drop the guns throughout the chase.[20] Coleman saw the plaintiff with his right hand in his right pocket with a gun with an extended magazine sticking out, and then the gun fell out and onto the drive while the plaintiff continued running.[21]

The plaintiff ran into the street, and Coleman saw him reach into his jacket and grab a second gun.[22] Coleman continued to command the plaintiff to "drop the gun" and warned, "drop the guns or I'll shoot."[23] Coleman saw the plaintiff holding the gun in his grip "like he intended to operate it," with the barrel pointing back towards Coleman "multiple times" as it swung in his arm while running.[24] Coleman claimed that, immediately before he fired, the plaintiff's back was partially facing him, he raised his elbow, turned his head to the left, and pointed the arm holding the

[16] *Id.* at 31 (p. 117:14–19).

[17] *Id.* at 31–32 (pp. 117:17–118:20).

[18] *Id.* at 25 (p. 104:9–18).

[19] Coleman Dep., Ex. B to Blechman Decl. – ECF No. 37-1 at 73–76 (pp. 62:5–21, 63:18–64:5, 65:10–18).

[20] *Id.* at 78 (p. 68:14–25).

[21] *Id.* at 80–81 (pp. 70:16–71:18), 84 (p. 74:6–15).

[22] *Id.* at 85 (p. 75:3–21).

[23] *Id.* at 86 (p. 76:2–8).

[24] *Id.* at 87–88 (pp. 77:12–78:14).

firearm towards Coleman.[25] Coleman fired his weapon twice, striking the plaintiff in the left buttocks and left tricep.[26]

**4. Video Evidence**

The parties' experts each synchronized home-surveillance footage and audio from surrounding residences to capture the incident.[27] Coleman's body-worn camera was uncharged and non-operational during the pursuit.[28]

Only distant, brief images of the initial part of the pursuit where the plaintiff exited the Lexus were captured on video, but the audio shows that Coleman issued six commands for the plaintiff to put his "hands up" over the first six seconds of the chase.[29] There is then a fifteen-second gap in the audio.[30] In the two seconds following that gap, Coleman shouts "hands up" once and "drop the gun" twice, and then the plaintiff can be seen and heard dropping the first gun.[31]

Over the next four seconds, Coleman shouts "drop the gun" twice, "drop the gun, I'll shoot you," and then "drop the gun."[32] During these commands, the plaintiff is holding the second gun by the grip in his right hand with the barrel generally pointing down.[33] In the middle of Coleman's last command to "drop the gun," the plaintiff begins to throw the gun across his body to the left with his right hand.[34] Within less than one second of the plaintiff's releasing the second firearm

---

[25] *Id.* at 91–92 (pp. 81:19–25, 82:21–25).

[26] *Id.* at 96 (p. 86:12–18).

[27] McFarlane Decl. – ECF No. 37-1 at 166–67; Vaughn Video, Ex. 2 to Cravanas Decl. – ECF No. 40-2.

[28] Coleman Dep., Ex. B to Blechman Decl. – ECF No. 37-1 at 26 (p. 45:10–25).

[29] Defs.' Video, Ex. G-5 to *id.* – ECF No. 37-1 at 0:09–15 (15:18:31–37).

[30] *Id.* at 0:15–30 (15:18:38–52).

[31] *Id.* at 0:30–33 (15:18:53–55).

[32] *Id.* at 0:33–36 (15:18:55–59).

[33] Vaughn Video, Ex. 2 to Cravanas Decl. – ECF No. 40-2 at 0:29–40 (15:18:53–56).

[34] *Id.* at 0:14–15 (15:18:55).

from his right hand, Coleman fires two shots within 0.245 seconds.[35] The entire foot pursuit lasted about twenty-seven seconds up to the time of the shooting.[36]

**5. Post-Arrest Convictions**

The plaintiff was charged with several crimes, including felony possession of a firearm and resisting, obstructing, or delaying Coleman in violation of Cal. Penal Code § 148(a)(1).[37] The plaintiff pleaded no contest and was convicted of felony carrying a loaded firearm and misdemeanor resisting, obstructing, or delaying Coleman.[38] The plaintiff's counsel stipulated to the police reports as the factual basis for the plea, which summarized the transcript of Coleman's post-shooting statement and summary.[39]

The report states that Coleman drew his firearm on the plaintiff because he "realized the passenger had stuffed both of his hands into his jacket pockets when he got out of the car," "recogniz[ing] that as a danger cue." Coleman yelled "hands up" several times before the plaintiff fled "in an all-out sprint running downhill." The chase continued around a street corner, and the plaintiff ran across the street between a truck and the front yard of a house with his hands "still in his jacket pockets."[40] "Coleman continuously yelled, 'Put your hands up. I'll shoot you.'"[41] After the plaintiff ran around the truck, "Coleman started to see the [plaintiff]'s elbow retract" and saw "a black extended magazine peek out of the jacket pocket."[42] "In an instant, that gun was on the ground," though Coleman had "no memory of how the gun got there."[43]

---

[35] *Id.*; Forensic Video Report – ECF No. 37-1 at 181.

[36] Forensic Video Report – ECF No. 37-1 at 187.

[37] Criminal Compl., Ex. J to Blechman Decl. – ECF No. 37-1 at 285–88.

[38] Plea Form, Ex. K to *id.* – ECF No. 37-1 at 294–96; Plea Tr., Ex. L to *id.* – ECF No. 37-1 at 304–05.

[39] Plea Tr., Ex. L to *id.* – ECF No. 37-1 at 304–05; Coleman Interview Tr., Ex. M to *id.* – ECF No. 37-1 at 309–34; Police Report, Ex. N to *id.* – ECF No. 37-1 at 336–50.

[40] Police Report, Ex. N to Blechman Decl. – ECF No. 37-1 at 345–46.

[41] *Id.* at 346 (cleaned up).

[42] *Id.*

[43] *Id.*

Coleman continued saying, "Drop the gun. I see the gun. I'll shoot you." "Coleman told the suspect to get on the ground. Within a fraction of a second, [he] saw another extended magazine come out of what he believed was the [plaintiff]'s left pocket." "Coleman believed that gun was in the suspect's left hand. Deputy Coleman then saw the suspect's elbow raise, and the gun was coming to point towards him." Coleman stated that

> Because the suspect ditched the first gun and pulled out a second gun, he thought the [plaintiff] felt like the only way for him to get out of this was to shoot [Coleman]. Deputy Coleman thought the suspect was getting ready to shoot him in the face. Deputy Coleman then fired two shots. As Deputy Coleman fired those two shots, the suspect started to fall. As the suspect fell, Deputy Coleman saw his body turning towards him. The suspect's elbow was rising, and the gun was pointing towards Deputy Coleman. In the next frame Deputy Coleman remembered, the suspect's gun was in the air, and it was flying towards the front yard of the house."[44]

The parties consented to magistrate-judge jurisdiction.[45] 28 U.S.C. § 636(c)(1). The court held a hearing on July 30, 2026.

## ANALYSIS

Summary judgment must be granted where there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The movant bears the initial burden of showing the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant meets its burden, the nonmoving party must produce evidence of a genuine issue of material fact. *Id.* at 322–23.

The parties do not dispute the underlying facts. The plaintiff fled from the Lexus in possession of two firearms. Coleman pursued the plaintiff and issued commands for him to put his hands up and to "drop the gun." The plaintiff did not follow the initial commands to raise his hands but eventually dropped one of the firearms. Coleman saw the plaintiff holding a second firearm by the grip in his right hand and gave additional commands to drop the gun, warning once that he would shoot. The plaintiff threw the second gun across his body, appearing to keep the barrel of the

---

[44] *Id.* at 346–47.

[45] Consents – ECF Nos. 9, 11.

firearm generally pointed down before the throw, and Coleman shot the plaintiff within less than one second of the firearm leaving the plaintiff's hand.[46]

The issues are (1) whether the plaintiff's excessive-force and battery claims are barred under *Heck*, (2) whether Coleman reasonably used deadly force, (3) whether Coleman is entitled to qualified immunity, and (4) whether any facts support the intent requirement of the plaintiff's Bane Act claim.

**1. *Heck***

The defendants contend that the plaintiff's excessive-force claims are barred under *Heck v. Humphrey* because proving the claims would negate his § 148(a)(1) conviction, which requires showing Coleman lawfully performed his duties.[47] 512 U.S. 477 (1994). The plaintiff counters that finding that Coleman used excessive force would not necessarily invalidate his conviction because the factual basis could have been one of multiple acts: the plaintiff's remaining in the car during the pursuit, exiting the car and fleeing on foot, or failing to immediately stop when commanded.[48] The defendants respond that the factual basis for his plea was the entire incident because his counsel stipulated to the facts in the police report.[49]

The excessive-force claims are not *Heck*-barred. In California, a conviction for resisting arrest pursuant to Cal. Penal Code § 148 may be lawfully obtained only if the officers do not use excessive force in the course of making that arrest. *Smith v. City of Hemet*, 394 F.3d 689, 696 (9th Cir. 2005) (en banc) (if police officers used excessive force after the acts of resistance upon which the § 148 conviction was based had ceased, *Heck* does not bar a § 1983 action for that use of excessive force).

"In all cases involving the application of *Heck* to a § 148(a)(1) conviction, the question is whether the specific act for which the plaintiff was convicted was resistance to the particular use

[46] *See supra* Statement.

[47] Reply – ECF No. 42 at 16

[48] Opp'n – ECF No. 40 at 26.

[49] Reply – ECF No. 42 at 15.

of force the plaintiff alleges was unlawful. If it was not, 'success on the merits' of the plaintiff's § 1983 action 'would not *necessarily* imply that the plaintiff's conviction was unlawful.'" *Martell v. Cole*, 115 F.4th 1233, 1238 (9th Cir. 2024) (quoting *Heck*, 512 U.S. at 487 n.7) (emphasis added) (cleaned up). As Ninth Circuit caselaw "make[s] clear, this principle holds true regardless of the number of seconds or minutes between the plaintiff's act of resistance or obstruction and the officer's allegedly unlawful use of force." *Id.* A "conviction under California Penal Code § 148(a)(1) does not bar a § 1983 claim for excessive force under *Heck* when the conviction and the § 1983 claim are based on different actions during one continuous transaction." *Hooper v. County of San Diego*, 629 F.3d 1127, 1134 (9th Cir. 2011).

Here, while the plaintiff stipulated to the police report (which describes the entire incident), the plea transcript and plea form do not specify which act or acts by the plaintiff (e.g., running or disobeying commands to put his hands up) formed the factual basis for his plea.[50] Thus, the court cannot tell whether success on his excessive force claims would necessarily imply that the § 148(a)(1) conviction was unlawful. *See Lemos v. County of Sonoma*, 40 F.4th 1002, 1008–09 (9th Cir. 2022) (en banc) (excessive force claims not *Heck*-barred when "the defendant may have been found guilty based on one of several different events" (cleaned up)).

The defendants rely on *Sanders v. City of Pittsburg* for the proposition that the factual bases for a § 148(a)(1) conviction are indivisible where the court can determine that the plaintiff resisted and obstructed all the way until he was shot and fell.[51] 14 F.4th 968 (9th Cir. 2021). But the court in *Martell* rejected this argument, noting that the basis for this proposition was "specifically disapproved" by the en banc court in *Lemos*, which held "that when the record shows the defendant may have been found guilty 'based on one of several different events, then a guilty verdict does not necessarily determine the lawfulness of the officers' actions' throughout the entire encounter.'" *Martell*, 115 F.4th at 1239 (cleaned up) (quoting *Lemos*, 40 F.4th at 1008–09).

---

[50] Plea Form & Plea Tr., Exs. K–L to Blechman Decl. – ECF No. 37-1 at 294–305; Coleman Interview Tr., Ex. M. to *id.* – ECF No. 37-1 at 322–25 (describing the foot pursuit and shooting).

[51] Mot. – ECF No. 37 at 18; Reply – ECF No. 42 at 15–16.

What matters is whether the record made clear which of the plaintiff's acts was the basis of a § 148(a)(1) conviction. Like in *Martell*, the record here does not specify which act formed the basis of the plaintiff's conviction. *Id.* at 1234 ("His guilty plea did not specify which act was the basis of his conviction."); *see Hooper*, 629 F.3d at 971 ("[T]he record was silent on which act or acts formed the basis of [the plaintiff's] conviction."); *Lemos*, 40 F.4th at 1008–09. *Sanders* is distinguishable from this case because the plaintiff in *Sanders* had "stipulated that the factual basis for his conviction encompassed the three instances of resistance identified in the preliminary hearing transcript." 14 F.4th at 972; *see also Winder v. McMahon*, 345 F. Supp. 3d 1197, 1203 (C.D. Cal. 2018) (the preliminary hearing transcript contained the factual basis for the plaintiff's conviction).

Other cases that the defendants cite are distinguishable because the courts determined that the plaintiffs' conduct was one continuous course of conduct. *Susag v. City of Lake Forest*, 94 Cal. App. 4th 1401, 1409–10 (2002) ("[A]ny claim of excessive force based on discrete acts that occurred immediately preceding Cory's arrest is barred by [Heck] . . . ."); *Cunningham v. Gates*, 312 F.3d 1148, 1155 ("[T]here was no break between Cunningham's provocative act of firing on the police and the police response that he claims was excessive."). Here, the plaintiff's complying with Coleman's instructions to drop his firearms created a separate factual context from his initial flight. *See Hooper*, 629 F.3d at 1132. *Webber v. City and County of San Francisco* is distinguishable because, in determining that the plaintiff's excessive force claims were barred, the court relied on the plaintiff's contention that "he offered no resistance, or no serious resistance, to the arrest and should not have been arrested." No. C 11–00476 CRB, 2011 WL 6151605, at *7 (N.D. Cal. Dec. 12, 2011). The plaintiff here makes no similar contention.

In sum, *Heck* does not bar the claim.

**2. Excessive Force**

The defendants assert that Coleman's use of deadly force was reasonable because the plaintiff's acts (fleeing while defying commands and possessing two loaded firearms in a residential area) were extremely dangerous, he had multiple opportunities to comply with commands, and Coleman

was required to make a split-second decision to react to the plaintiff's throwing the second firearm.[52] The plaintiff contends that the *Graham* factors weigh in his favor because he did not pose a threat (he never made threats or pointed a firearm at Coleman), the severity of his crimes was minimal, and he obeyed commands by dropping the first gun and throwing the second.[53]

Fact disputes preclude determining that Coleman's use of force was reasonable under these circumstances.

"The Fourth Amendment requires police officers making an arrest to use only an amount of force that is objectively reasonable in light of the circumstances facing them." *Blankenhorn v. City of Orange*, 485 F.3d 463, 477 (9th Cir. 2007) (citing *Tennessee v. Garner*, 471 U.S. 1, 7–8 (1985)); *accord Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 921 (9th Cir. 2001) ("A claim against law enforcement officers for excessive force is analyzed under the Fourth Amendment's 'objective reasonableness' standard."). Section 1983 provides a private right of action for those whose federal constitutional or statutory rights are deprived under color of law. *See* 42 U.S.C. § 1983; *see generally Monteilh v. County of Los Angeles*, 820 F. Supp. 2d 1081, 1089 (C.D. Cal. 2011).

"Determining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (cleaned up). A court must evaluate "the facts and circumstances of each particular case, including [(1)] the severity of the crime at issue, [(2)] whether the suspect poses an immediate threat to the safety of the officers or others, and [(3)] whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* The *Graham* factors are not exhaustive. *George v. Morris*, 736 F.3d 829, 837–38 (9th Cir. 2013). Because "there are no per se rules in the Fourth Amendment excessive force context," *Mattos v. Agarano*, 661 F.3d 433, 441 (9th Cir. 2011), courts must "examine the totality of the circumstances and

---

[52] Mot. – ECF No. 37 at 21–24.

[53] Opp'n – ECF No. 40 at 17–18.

United States District Court
Northern District of California

consider whatever specific factors may be appropriate in a particular case, whether or not listed in *Graham*," *Bryan v. MacPherson*, 630 F.3d 805, 826 (9th Cir. 2010) (cleaned up).

Deadly force is reasonable only if an officer has "probable cause to believe that the suspect poses a threat of serious harm, either to the officers or to others[.]" *Garner*, 471 U.S. at 11. "If the person is armed — or reasonably suspected of being armed — a furtive movement, harrowing gesture, or serious verbal threat might create an immediate threat." *George*, 736 F.3d at 838.

"The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. "The calculus of reasonableness" must allow "for the fact that police officers are often forced to make split-second judgments — in circumstances that are tense, uncertain, and rapidly evolving — about the amount of force that is necessary in a particular situation." *Id.* at 396–97.

The defendants are not entitled to summary judgment on the reasonableness of Coleman's use of lethal force. Most importantly, reasonable jurors could disagree about whether the plaintiff's actions posed an immediate threat to Coleman and others. He grabbed and concealed two firearms before exiting the Lexus and then ran through a residential neighborhood while disobeying commands to put his hands up. But he made no threats against Coleman and eventually obeyed commands to drop the first gun. Reasonable minds could differ about whether the plaintiff's throwing the second firearm away (rather than dropping it like the first) posed a danger to Coleman or others, particularly when the plaintiff was shot in the back.

The plaintiff's fleeing arrest weighs in favor of finding that Coleman's actions were reasonable. While the plaintiff eventually released both firearms from his possession, he did not stop running and never put his hands up.

The plaintiff's crimes (possessing loaded firearms and resisting arrest) were serious, particularly because of the residential setting. The plaintiff did not engage with these facts in his brief, stating only that he was a passenger in the car and was not the person who initially fled the car.[54]

[54] *Id.* at 18.

Under these circumstances, disputes about whether it was reasonable for Coleman to perceive the plaintiff's conduct as threatening while fleeing Coleman (particularly his throwing the second firearm across his body) precludes determining at this stage that Coleman's conduct was reasonable.

**3. Qualified Immunity**

"[T]he doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Mattos*, 661 F.3d at 440 (en banc) (cleaned up) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). Qualified immunity is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Mueller v. Auker*, 576 F.3d 979, 992 (9th Cir. 2009) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). "Under qualified immunity, an officer will be protected from suit when he or she 'makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances.'" *Id.* (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004)).

"[Q]ualified immunity protects all but the plainly incompetent or those who knowingly violate the law." *Ziglar v. Abbasi*, 582 U.S. 120, 152 (2017). "The doctrine of qualified immunity gives officials breathing room to make reasonable but mistaken judgments about open legal questions." *Id.* at 150–51 (cleaned up). "[I]f a reasonable officer might not have known for certain that the conduct was unlawful[,] then the officer is immune from liability." *Id.* at 152.

In determining whether an official is entitled to qualified immunity, courts consider (1) whether the official violated a constitutional right of the plaintiff and (2) whether that constitutional right was "clearly established in light of the specific context of the case" at the time of the events in question. *Mattos*, 661 F.3d at 440. Courts may exercise their sound discretion in deciding which of these two prongs should be addressed first. *Id.* (citing *Pearson*, 555 U.S. at 235).

The parties only dispute the second prong. The defendants assert that Colemen is entitled to qualified immunity because there is no consensus of cases that precludes a pursuing officer from

using deadly force when a fleeing, unsearched suspect pulls out a second gun, with an extended magazine, refuses to drop it, and then makes harrowing movements with it over several strides.[55] The plaintiff responds that qualified immunity does not apply when it is disputed whether an armed suspect made a harrowing gesture or furtive movement.[56]

The problem with the defendants' position is that it presumes that the plaintiff's conduct involved harrowing movements (a point that the plaintiff disputes) without supplying case law determining that similar conduct was threatening. The potential harrowing movements in this case include, (1) according to Coleman's deposition testimony, the plaintiff's pointing the barrel of the second gun back at Coleman while swinging his arms during flight, (2) the plaintiff's holding the gun for several strides without dropping it, and (3) his throwing the gun across his body moments before being shot.

Fact disputes exclude the first option: the plaintiff asserts that he held the second gun pointed down during flight, and the video appears to support him. The second option fails because holding a gun by itself does not support qualified immunity. *Curnow By and Through Curnow v. Ridgecrest Police*, 952 F.2d 321, 325 (9th Cir. 1991) (denying qualified immunity to officer who shot a man holding a submachine gun where the parties disputed whether he raised the gun at the officer); *Est. of Lopez v. Gelhaus*, 149 F. Supp. 3d 1154 (N.D. Cal. 2016) (same).

The defendants point to no similar case where a suspect's throwing away a firearm after having complied with a command to discard a different firearm was determined to be a harrowing gesture.[57] The cases that the defendants do cite are distinguishable because they involve suspects who reached for their waistbands, which the plaintiff here did not do. *Cruz v. City of Anaheim*, 765 F.3d 1076, 1078 (9th Cir. 2014) (police applied reasonable force where suspect reached for his back

---

[55] Mot. – ECF No. 37 at 25–26.

[56] Opp'n – ECF No. 40 at 20–23.

[57] The defendants also cite *Easley v. City of Riverside* as supporting qualified immunity, but while the facts of *Easley* are analogous to this case (involving a grant of qualified immunity where police shot the suspect two to four seconds after throwing away a gun), *Easley* was reversed and remanded on rehearing en banc. 890 F.3d 851 (9th Cir. 2018), *rev'd and remanded*, 765 F. App'x 282 (9th Cir. 2019) (en banc).

waistband); *Est. of Moppin-Buckskin v. City of Oakland*, No. C 08-04328 CW, 2010 WL 147976, at *2–6 (N.D. Cal. Jan. 12, 2010) (same); *A.G.1 v. City of Fresno*, No. 1:16-CV-01914-LJO-SAB, 2018 WL 4042906, at *6 (E.D. Cal. Aug. 22, 2018) (same); *Foster v. City of Fresno*, 392 F. Supp. 2d 1140, 1157–58 (E.D. Cal. 2005) (reasonable force where "Foster raised his arm up; Foster moved his arm down toward his waistband area"); *see also George*, 736 F.3d at 838 (affirming denial of qualified immunity where fact disputes existed about whether the decedent pointed a gun at police officers). None of these cases suggests that a plaintiff who is fleeing police, complies with a command to drop a gun, never points a gun at police, and throws a second gun away has performed a harrowing or furtive gesture.

The defendants cite *C.V. ex rel. Villegas v. City of Anaheim*, where the court determined that qualified immunity applied even when a reasonable juror could have concluded that

> (1) the officers, responding to a call about a suspected drug dealer armed with a shotgun . . . , came upon Villegas already holding a long gun; (2) Villegas was ordered to put his hands up, and as he was complying, the officers ordered him to drop his gun; (3) without providing a warning or sufficient time to comply, or observing Villegas pointing the long gun toward the officers or making any move toward the trigger, [police] resorted to deadly force.

823 F.3d 1252, 1256 (9th Cir. 2016). While *C.V.* is closer to the facts of this case than the others cited by the defendants, it is distinguishable because it involved a suspected drug dealer who was facing officers with a long gun, which presents an easier situation for the suspect to fire on the officers than one where the plaintiff is fleeing from officers.

The circumstances are instead more similar to those of *Banks-Reed v. Mateu*, in which the Ninth Circuit affirmed a denial of qualified immunity where an officer found Mr. Tindle struggling with a second man over a gun, ordered them to show their hands, the struggle continued, Mr. Tindle raised his empty left hand, and the officer shot Mr. Tindle three times at point-blank range. No. 19-17444, 2022 WL 486607, at *1 (9th Cir. Feb. 17, 2022). Like Mr. Tindle, the plaintiff was shot while attempting to comply with commands and did not point a weapon at the officer.

In the absence of a harrowing gesture, the remaining circumstances are that Coleman shot the plaintiff in the back while he was fleeing and in the process of throwing a gun away from himself. Neither circumstance entitles Coleman to qualified immunity. *See Garner*, 471 U.S. at 11 (finding

United States District Court
Northern District of California

deadly force was unjustified when an officer shot an unarmed man in the back when he was fleeing over a fence after committing a house burglary).

**4. State-Law Claims**

The defendants are entitled to summary judgment on the plaintiff's negligence claims. The court denies summary judgment as to the remaining state-law claims.

The Bane Act prohibits interference or attempted interference with a person's rights under federal or California law by "threats, intimidation, or coercion." Cal. Civ. Code § 52.1(a). With respect to a Bane Act claim for excessive force, "the Bane Act does not require the 'threat, intimidation or coercion' element of the claim to be transactionally independent from the constitutional violation alleged." *Reese v. County of Sacramento*, 888 F.3d 1030, 1043 (9th Cir. 2018) (citing *Cornell v. City & County of San Francisco*, 17 Cal. App. 5th 766, 799–800 (2017)). "[T]he Bane Act requires a 'a specific intent to violate the arrestee's right to freedom from unreasonable seizure.'" *Id.* (citing *Cornell*, 17 Cal. App. 5th at 801–02).

The defendants argue that there is no evidence that Coleman intended to deprive the plaintiff of any right.[58] The plaintiff contends that a jury could infer specific intent or reckless disregard because Coleman shot an unarmed suspect in the back while his body camera was deactivated.[59]

A reasonable jury could conclude that Coleman shot the plaintiff in the back while he was attempting to comply with commands to drop the second gun and could infer from these facts intent or reckless disregard for the plaintiff's Fourth Amendment rights.

The parties do not dispute that the plaintiff's battery claim requires showing unreasonable force. *Nelson v. City of Davis*, 709 F. Supp. 2d 978, 992 (E.D. Cal. 2010). Thus, the court denies summary judgment for the same reasons as the plaintiff's excessive force claims.[60]

---

[58] Reply – ECF No. 42 at 16–17.

[59] Opp'n – ECF No. 40 at 29.

[60] *See supra* Analysis § 2, Excessive Force.

United States District Court
Northern District of California

The plaintiff conceded that his negligence claims are barred by Cal. Civ. Code § 3333.3 by not addressing the defendants' arguments.[61] *See Narang v. Gerber Life Ins.*, No. 18-CV-04500-LHK, 2018 WL 6728004, at *4 (N.D. Cal. Dec. 21, 2018) (collecting cases).

## CONCLUSION

The court grants summary judgment in favor of the defendants on the plaintiff's negligence claims, which he conceded as barred under Cal. Civ. Code § 3333.3. The court denies summary judgment as to the excessive-force and battery claims because they are not *Heck*-barred, fact disputes preclude determining that Coleman's use of force was reasonable, and qualified immunity does not apply. Fact disputes preclude granting summary judgment on the Bane Act claim. This order resolves ECF No. 37.

**IT IS SO ORDERED.**

Dated: August 5, 2026

LAUREL BEELER
United States Magistrate Judge

[61] Reply – ECF No. 42 at 17.